IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-1084-MDB

KENNETH ESPINOZA,

    Plaintiff,

v.

HENRY TRUJILLO, a Las Animas County Sheriff Deputy, in his individual capacity,
MIKHAIL NOEL, a Las Animas County Sheriff Deputy, in his individual capacity,
REY SANTISTEVAN, Las Animas County Undersheriff, in his official and individual capacity,
SHERIFF DEREK NAVARETTE, Las Animas County Sheriff, in his official and individual capacity,
LAS ANIMAS COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendants.

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS [ECF 65]

Plaintiff Kenneth Espinoza, by and through his attorney Kevin Mehr of Mehr Law PLLC, in response to Supervisory and BOCCs' Motion to Dismiss ("MTD"), states as follows:

### INTRODUCTION:

Plaintiff brings this action against Defendants, who are all members in some capacity, of the Las Animas County Colorado government. On November 29th, 2022 Defendants Noel and Trujillo violently arrested Plaintiff without cause, and in the process tased him numerous times, including once in the mouth while Plaintiff was handcuffed behind his back.

In response to the initial filing of this lawsuit, an Internal Affairs Investigation of this incident was conducted by an outside agency, the Pueblo County Sheriff's Department. That investigation determined, among other findings, that Trujillo and Noel had no justification to

detain Mr. Espinoza or use any force against him. The LACSD, through Defendants Santistevan and Navarette confirmed these findings and terminated Noel and Trujillo.

Plaintiff's Third Amended Complaint contains the following relevant, newly discovered facts: 1) Defendants Noel and Trujillo both assert that they received little to no training on LACSD policy, 2) Defendants Santistevan and Navarette revealed that it is LACSD practice to determine use of force incidents justified without any actual review of the incident evidence, 3) Defendants Santistevan and Navarette determined the use of force in this incident was *not* justified "a few weeks" after it occurred, yet took no disciplinary action whatsoever until they were forced to by this lawsuit, and 4) that Trinidad Police Department regularly takes complaints against LACSD officers, including use of force, because it is so widely known that LACSD buries any complaints against its employees. These newly discovered facts are wholly ignored in MTD.

Plaintiff further incorporates all facts included in his well pled 71 page complaint in support of his arguments below, even if they are not specifically mentioned.

## DEFENDANTS' MOTION TO DISMISS

On October 3rd, 2023 Defendant Navarette, Santistevan and Board filed a Motion to Dismiss (ECF 65), seeking dismissal of Count Five and Count Six of Plaintiff's Third Amended Complaint (ECF 60-hereinafter "3AC"). Defendants bring this motion pursuant to Federal Rule 12(b)(6) only and do not challenge the 3AC based on any Colorado Rule of Civil Procedure.

## LEGAL STANDARD

"There is a strong presumption against the dismissal of claims under [Fed. R. Civ. P. 12(b)(6)/C.R.C.P. 12(b)(5)] and a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v.*

*Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). A complaint will survive a [Fed. R. Civ. P. 12(b)(6)/C.R.C.P. 12(b)(5)] motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausible" does not mean "likely to be true," but rather a nudge beyond "conceivable." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "Thus, a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citation omitted);

## COUNT FIVE:

### Claims brought against the Board of County Commissioners and the Sheriff/Undersheriff in their official capacities are not redundant.

Defendants' first argument with respect to Count Five is that naming a Board of County Commissioners and a Sherriff/Undersheriff in their official capacities is redundant. This argument is not supported by law.

Importantly, "Under both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities. Colo. Const. art XIV, §§8 and 8.5, treat boards of county commissioners and sheriffs as separate entities, and various statutory provisions enumerate the respective specific responsibilities and powers of a county sheriff, a county, and a county board of commissioners." *Tungent v. Bd. Of Cnty. Comm'rs*, 992 P.2d 650, 651-652 (Colo. App. 1999), *cert. denied* (2000).

Further, under Colorado Law, both a Board of County Commissioners and a Sheriff's Department are unique legal entities that may "sue and be sued." C.R.S. § 30-11-101(1)(a)("Each organized county within the state is a body corporate and politic and such is empowered for the following purposes: to sue and be sued.").

Likewise, a Sheriff and Board of County Commissioners are separate legal entities, subject to suit as "persons" for purposes of 42 U.S.C. § 1983: "The [] Sheriff's Department likewise qualifies as a "person" under the statute… a county sheriff has many independent duties, and is himself responsible for posting bond to cover any potential liability that he may incur by virtue of his office." *Wigger v. McKee*, 809 P.2d 999 (Colo. App. 1990)(internal citations omitted).

Finally, it is critical to note that the Board of County Commissioners and the Sheriff are both elected offices, selected in *separate* elections. This important distinction, noted in *Wigger*, not only reveals that Defendants' argument here is contrary to the law, but also simple logic. *Id*.

### **Plaintiff has pled a plausible *Monell* claim against Board and Supervisory Defendants**

Defendants next argue that Plaintiff has failed to plead a "Plausible claim against BOCC" (MTD p. 9). This argument is without merit.

In Count Five, Plaintiff asserts that the Board, and Supervisory Defendants (Navarette and Santistevan, in their official capacities) are liable in this matter, through on municipal liability under 42 U.S.C. § 1983, based on a *Monell* claim for two discrete actions: 1) Failing to discipline Defendants Noel and Trujillo, and 2) Failure to train Defendants Noel and Trujillo.

### Failure to Discipline

In order to establish [a *Monell* claim for failure to discipline], [a p]laintiff must allege that the Departments had in place (1) a custom or policy of failure to discipline; (2) deliberate indifference on the part of the decision maker, and (3) a causal link to the constitutional deprivation. *Estate of Holmes by and through Couser v. Somers*, 387 F. Supp. 1233, 1263 (D.

Kan. 2019). "Evidence of prior complaints can be sufficient to show that a municipal Defendant and the officials ignored the officers' misconduct." *Id*.

Here, Plaintiff has asserted ample facts to support this claim against both the Board and Supervisory Defendants. Trujillo and Noel have both been the subject of prior excessive force complaints, including in a civil lawsuit settled just twelve days prior to this incident. (3AC ¶ 46).

Similarly, according to the IA investigation, LACSD's practice of ignoring citizen complaints is so well known that local citizens refer them directly to the Trinidad Police Department. (3AC ¶149). The IA file revealed that Trinidad Police Department had investigated and referred to LACSD seven additional reports of criminal conduct attributed to Noel and Trujillo, however "they never do anything about it." (3AC ¶ 96). MTD wholly ignores these facts.

Additionally, Trujillo was the subject of a multitude of actions that *should have* subjected him to discipline- five convictions for violent crimes (3AC ¶ 40), five civil protection orders (AC ¶ 41), misconduct (3AC ¶ 43) and an officer involved shooting where the family lodged a complaint (3AC ¶ 45). Yet, as Santistevan made clear in his response to Plaintiff's 2023 CORA/CCJRA request, Noel and Trujillo have *never* been disciplined or even investigated for any of these incidents (3AC ¶ 68). In fact, Trujillo was promoted to a position making him third in command at LACSD in 2022, and increasing his salary by 43% (3AC ¶ 93).

Defendant Board was or certainly should have been aware of this misconduct. Not only do civil suit settlements require Board approval (3AC ¶ 47), but the Board approved the Sheriff's Department 2022 budget (3AC ¶ 79), in which "settlement" appears as a line item, and it was referenced in at least three separate executive sessions of the Board (3AC ¶ 79). State law requires the Board to "adopt the annual budget for … departments… which are funded in whole

or in part by county appropriations." C.R.S § 30-11-107(2)(a)(emphasis added).  Also, law requires each county department to "make appropriate budget recommendations each year to the board of county commissioners for the operation of their respective offices..." *Id*. This means that not only is the Board required by law to consider and approve the LACSD budget, but Navarette and/or Santistevan are required by law to make a recommendation as to why their budget is appropriate.

Further, all salaries of Sheriff's Deputies are fixed by the Sheriff and approved by the Board. C.R.S. § 30-2-106(1).  This is not only state law, but Las Animas County government policy, as all pay changes of LACSD employees require Board signature. (3AC ¶ 72).

The connection between these prior acts, committed by Defendants Noel and Trujillo, known to the Board and Supervisory Defendants, and the constitutional deprivation alleged here- excessive and unlawful force- is obvious.  Trujillo and Noel have repeatedly, over a period of nearly 25 years, engaged in unlawful conduct, often criminal in nature, and in every instance involving unlawful force, yet have not a single time been disciplined by the Board, LACSD or any entity within the Law Animas County government.  It is painfully clear, particularly to Plaintiff, that the Board and Supervisory Defendants' inaction in failing to discipline, often in direct defiance of department and/or county policy, and Colorado Law, has allowed Trujillo and Noel to engage in violence with impunity, and clearly leading to their actions here, causing Plaintiff's injuries by means of excessive and unlawful force.

Most importantly, Defendants entirely ignore their own actions in failing to discipline Trujillo and Noel *in this incident*. Navarette and Santistevan both determined that the force used in this incident was not justified, however they took no disciplinary action whatsoever until this lawsuit was filed nearly six months later. (3AC ¶ 100). By determining that the force in this

incident was not justified, LACSD reveals that they identified Noel and Trujillos' actions to not only be contrary to LACSD written policy, but criminal. Yet, both Noel and Trujillo were not subject to *any* discipline for nearly six months, and then only once Plaintiff filed this suit.

Defendants' argument here that Plaintiff has failed to plead even a single fact making success on his claim in Count Five "very remote and unlikely" is wholly without merit. *Dias*, *supra*.

Failure to Train

Defendants next argue that Plaintiff has failed to plead a plausible claim for failure to train. This argument is without merit.

For municipal liability, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Cullen v. Phillips*, 30 P.3d 828, 830–31 (Colo. App. 2001) ("Where a municipality completely fails to train its police force or trains its officers in a reckless or grossly negligent matter such that police misconduct is almost inevitable, liability may attach under § 1983"). To prevail on a failure to train claim against a municipality, a plaintiff must demonstrate that the training was inadequate and that "the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). Further, the United States Supreme Court has indicated that a pattern of similar constitutional violations by

untrained employees may be demonstrative of deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Stated differently, the "continued adherence to an approach may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." *Bd. Of Cty. Comm'rs of Bryan cty, Okla. v. Brown*, 520 U.S. 397, 407 (1997)). Moreover, the "existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id*. at 407-408.

As 3AC makes clear, both Noel and Trujillo testified in the IA investigation that they had received little to no training on any LACSD policy. (3AC ¶ 93). This Court's analysis of the plausibility of Failure to Train liability need go no further.

Nonetheless, the failure to train factors, as laid out in *Carr* have clearly been met in the 3AC: 1) Trujillo and Noel used physical force against Mr. Espinoza completely without justification (3AC ¶13-24); 2) Trujillo and Noel's use of force here arose in perhaps the most common "usual and recurring" situation for police officers- a traffic stop (3AC ¶14); 3) no training was required of either officer after this, or previous instances of misconduct, despite a clear need for training on the lawful use of force (3AC ¶ 96), and which the Board was clearly aware of (AC ¶ 79), and 4) in failing to train Trujillo and Noel on the appropriate use of force, they were unable to appreciate that their force here was outside of both policy and state law (AC ¶¶92-95). *Carr*, *supra* at 1228.

Specifically with respect to deliberate indifference, that term is perhaps the most accurate way to describe the Board's actions/inaction with regards to Trujillo and Noel. Here, the Board and Navarette/Santistevan agreed to the settlement in an excessive force case just 12 days prior

to the events of this case. According to Santistevan, no remedial trainings were taken by either officer. This was confirmed by both Noel and Trujillo that they had never received much training of any kind, on any LACSD policy, at any point in their employment. (3AC ¶ 92-95).

An examination of the LACSD's budget over the past fifteen years confirms that not much training of any type was provided to anyone in the department, unless it was shooting practice. LACSD spent 1.5 times more on ammunition that it did for personnel training over that period. (AC ¶ 116). This includes 2015, when LACSD spent *just $72 on personnel training, for the entire department, for the entire year*. (3AC 89). LACSD further memorialized their policy of violence, and priority of spending time and money at the gun range over any other type of training, in this 2019 photo on the Department's Facebook page:



As fully described above, the Board is responsible for signing off on every hiring decision, promotion, payment of lawsuit settlement, and the budget of LACSD employees. It is difficult to understand how the Board could repeatedly rehire Trujillo, and even promote him, repeatedly terminate him, review his criminal history, pay his settlements, and ask no questions about why such a troublesome, repeat criminal is not either permanently terminated or required to undergo significant training, *if not for the LACSD and Boards' deliberate indifference to his violent conduct*.

Conclusion

It is also important for the Court to review LACSD and the Boards' actions and inactions following the occurrence of this incident to see a perfect example of their failure to train and discipline Trujillo and Noel. While "linear time" may be a consideration to the cause and effect analysis of Defendants' after the fact action/inaction, after the fact actions are legally relevant to the issue of municipal liability. For example, in *Cordova v. Aragon*, 569 F. 3d 1183, at 1194 (10th Cir. 2009), the court stated "A subsequent cover-up might provide circumstantial evidence that the city viewed the policy as a policy in name only and routinely encouraged contrary behavior, see, e.g. *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir.1985) ("The disposition of the policymaker may be inferred from his conduct after the [violation occurred]."). *Id*. at 1194. Just as here, Navarette, Santistevan and the Boards' complete failure to follow their own policies and state law in connection with the instant case, Navarette's blatant lies in a Departmental press release, and the LACSD's active recruitment at a job fair promoting the use of weapons, are clear examples of their unconstitutional policies and practices at work. (3AC ¶¶59-82).

Finally, for these two theories of liability, the impact of the following two facts, new to 3AC, cannot be overstated: 1) it is LACSD's practice to justify use of force incidents without actually reviewing them, and 2) LACSD so notoriously ignores complaints against its officers, that citizen go directly to the Trinidad Police Department. A department cannot train or discipline its officers if they never actually review their officers' conduct. This is akin to a basketball player saying he's never committed a foul, when the referee doesn't actually watch the games.

**COUNT SIX:**

Defendants next argue that Count Six should be dismissed because 1) no cause of action exists under the Colorado Constitution, and 2) Plaintiff has failed to plead a supervisory liability claim against Navarette and Santistevan in their individual capacities.

<u>A cause of action exists under state law for supervisory liability</u>

Defendants first argue that no cause of action for supervisory liability exists under the state constitution. Defendants do not cite to any authority to support this conclusion and merely state that C.R.S. §13-21-131 does not "create a cause of action for enforcing generally "Colorado Constitution" or "constitutional rights." but for protecting individual rights "secured by the bill of rights, article II of the state constitution." (MTD p.18). In Count Six, Plaintiff does not assert a "general violation of the Colorado Constitution," but that Defendants Navarette and Santistevan, in their supervisory capacity, violated his individual rights, secured in Article II, Section 7 of the Colorado Bill of Rights. (3AC, p.61).

Defendants appear to next argue that because the words "personal participation" do not appear in the text of C.R.S. § 13-21-131, that supervisory liability does not exist. The language of 42 U.S.C. § 1983 also does not contain this language, yet courts impose liability on supervisors. In fact, the language of C.R.S. §13-21-131 is nearly identical to 42 U.S.C. § 1983. *See Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010)( "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights ... secured by the Constitution ...."). What is required for a lawsuit to proceed under C.R.S. §13-21-131 is: 1) the defendant be a peace officer, and 2)

that defendant subjects another person to a deprivation of rights under the state constitution. Both Navarette and Santistevan are 'peace officers' under the plain meaning of C.R.S. §§ 16-2.5-102 and 24-31-901(3) and thus subject to suit, in their *individual capacity* under C.R.S. § 13-21-131 when allegedly they violate a person's state constitutional rights.

The motivation behind defendant's argument here is transparent: "if the Court finds Section 131 creates a cause of action against Supervisory Defendants for their supervisory responsibilities, thus, *stripping them of the qualified immunity defense*….." (MTD p. 18). Under C.R.S. §13-21-131 they are not entitled to qualified immunity as they would be under 42 U.S.C. § 1983[1]. By pushing this court to read supervisory liability out of C.R.S. § 13-21-131 and into 42 U.S.C. § 1983, Defendants Navarette and Santistevan make a desperate grasp for a defense of qualified immunity because the Colorado Legislature expressly stripped all Colorado Peace Officers of that overbroad protection, when they passed C.R.S. § 13-21-131 as part of the "Enhance Law Enforcement Integrity Act." SB20-217.

<u>Plaintiff has sufficiently pled supervisory liability against Navarette and Santistevan</u>

Defendants finally argue that Plaintiff has not pled a plausible supervisory liability claim against Navarette and Santistevan. This argument is wholly without merit.

To establish supervisory liability for a constitutional violation, a plaintiff must "demonstrate (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds, supra* at 1200. Not only are the actions prior to the incident at issue relevant, but also

---

[1] In the even that this Court deems this claim is governed by 42 U.S.C. §1983, Plaintiff does not concede that Defendants' actions here would afford them qualified immunity.

"The disposition of the policymaker may be inferred from his conduct after the violation occurred." *Cordova, supra* at 1194.

Here, Plaintiff easily establishes a plausible claim against Navarette and Santistevan for supervisory liability. Prior to the instant case, both Defendants were or should have been aware of Trujillo's history of using violent and unlawful force, both prior to and during his employment at LACSD, yet they did nothing to remediate his propensity for violence. Trujillo was convicted of violent crimes both before and during his employment at LACSD. (AC ¶ 39,40). Trujillo was subject to protection orders which prevented him from possessing a firearm, yet he remained on the force at LACSD (AC ¶ 41). Trujillo was determined to be such a risk to himself and others that another police department confiscated his guns. (AC ¶ 43). Finally, Trujillo and Noel both were subject to a civil lawsuit involving the excessive use of force, which the County settled prior to this case. (AC ¶ 46). According to Sanistevan, no investigations, remedial trainings or any disciplinary action has *ever* been instituted against either officer.

The actions of Santistevan and Navarette after and in response to the instant case are a clear display of their willingness to encourage and cover up their officers' unlawful use of force. State law requires all incidents in which force is used against a civilian to be reported, yet this was never done in this case. (3AC ¶ 62). An internal report on the use of force is also required by LACSD policy, yet was never completed. (3AC ¶ 59). Despite Plaintiff's son making two complaints regarding the instant case, no complaint was ever recorded. (3AC ¶59). Despite LACSD policy requiring review of all body camera by Navarette and Santistevan when a taser is used, no reporting was ever done on this use of force. (3AC ¶ 61). Despite numerous material misrepresentation made by both Noel and Trujillo, no credibility report was made by Navarette or Santistevan, as required by LACSD and state law. (3AC ¶ 64). Despite endorsing the posting

of a photo of the Department deputies to be posted on the LACSD Facebook page, in which Santistevan himself is pictured, espousing a credo of encouraging the use of weapons, they now argue there was no policy encouraging violence. (AC ¶ 1). And finally, in the clearest display of their willingness to cover up their deputies' unlawful use of force, Naverette issued a public statement in which he blatantly lied that not only was Mr. Espinoza tased a single time, but he had data to back it up. (AC ¶ 85).

Finally, as 3AC reveals, it is LACSD's practice to justify use of force events without actually reviewing them, and LACSD's practice of ignoring citizen complaints against its officers, to include criminal investigations by an outside agency, is so notorious, that locals make the complaints directly to the Trinidad Police Department.

Thus, Plaintiff has clearly pled sufficient facts to support supervisory liability against Navarette and Santistevan. Both Defendants have repeatedly ignored and/or covered up prior instances of unlawful force committed by their deputies, which led to their unlawful use of force against Plaintiff, and their repeated cover ups and promotions of violence, both before and after the incident, make all too clear their intentional state of mind used in connection therewith.

**WHEREFORE**, Plaintiff respectfully requests this court deny Defendants' Motion to Dismiss and permit this case to proceed to trial.

/s/ Kevin Mehr
  **KEVIN MEHR, #49108**
  Counsel for Plaintiff
  Mehr Law PLLC
  3107 W. Colorado Ave. #184
  Colorado Springs, CO 80904
  Kevin.mehr@mehrlawcolorado.com

  Dated:  October 23, 2023

## Certificate of Service:

Above signed counsel hereby certifies that on October 23rd, 2023, a true and accurate copy of the foregoing RESPONSE TO DEFENDANTS' MOTION TO DISMISS was filed with the court and served via the CM/ECF filing system on:

**Alexandria L. Bell**
**Mathew Hegarty**
**Attorneys for Defendants Navarette, Santistevan, Board**
Hall & Evans LLC
1001 17th Street
Ste 300
Denver, CO 80202
303-628-3300
bella@hallevans.com
hegartym@hallevans.com


**David M. Goddard**
**Attorney for Defendants Trujillo and Noel**
Bruno Colin & Lowe, P.C.
1120 Lincoln Street
Suite 1606
Denver, CO 80203
303-831-1099
Email: dgoddard@brunolawyers.com